[Cite as *O'Leary v. Cleveland Bd. of Zoning Appeals*, 2026-Ohio-2605.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

RONALD J.H. O'LEARY, ET AL.,     :

    v.     :     Nos. 114700, 114706,
    and 114709

CITY OF CLEVELAND BOARD     :
OF ZONING APPEALS, ET AL.

    :

[APPEAL BY CITY OF CLEVELAND
AND LUTHERAN METROPOLITAN     :
MINISTRY; CROSS-APPEAL BY
BRIAN ROCKAS]     :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
           AND REMANDED
**RELEASED AND JOURNALIZED:** July 9, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CV-23-976603 and CV-23-976612

---

### *Appearances:*

Ronald J.H. O'Leary, *pro se.*

Mark D. Griffin, Cleveland Director of Law, and Carolyn
M. Downey, Assistant Director of Law, *for appellants.*

JONES DAY, Stephen G. Sozio, Adam J. Hollingsworth,
and April M. Johnson; Berns, Ockner & Greenberger,
LLC, Benjamin J. Ockner, and Majeed G. Makhlouf, *for
appellant/cross-appellee* Lutheran Metropolitan
Ministry.

Flowers & Grube and Paul W. Flowers, *for cross-appellant* Brian Rockas.

ANITA LASTER MAYS, J.:

{¶ 1} In this split decision, these consolidated appeals concern Lutheran Metropolitan Ministry's ("LMM") continued use of property at 4100 Franklin Blvd. in Cleveland. The property is situated in a residentially zoned district and has long operated under a certificate of occupancy ("COO") authorizing use as a "charitable institution." The Board of Zoning Appeals ("BZA") affirmed the notice of nonconformance ("NNC") issued by the City of Cleveland Department of Building and Housing ("the City") and granted area and use variances concerning the property. The trial court affirmed the BZA's NNC but reversed the BZA's grant of use and area variances. It also dismissed certain neighbors for failure to perfect their appeals. After a thorough review of the record, we affirm the trial court's judgment upholding the NNC and the dismissal of Brian Rockas ("Rockas") for lack of jurisdiction. A majority of the panel agrees that the trial court erred in reversing the BZA's area variance; that ruling is reversed and the area variance is remanded to the trial court for application of the correct legal standard. The trial court's judgment reversing the use variance is affirmed.

{¶ 2} For the reasons that follow, Part I of this split decision is delivered by Judge Anita Laster Mays and addresses the City's and the BZA's contentions regarding the NNC, Rockas's challenge to his dismissal for failure to perfect an administrative appeal and his allegation of a service defect, O'Leary's assignment of

error seeking reversal of the trial court's dismissal of the neighbors for lack of perfection, and the sufficiency of the trial court's journal entry. Part I also sets out the legal framework governing the variances. Judges Lisa B. Forbes and Sean C. Gallagher concur in judgment only as to Part I. Part II, delivered by Judge Lisa B. Forbes and joined by Judge Sean C. Gallagher, resolves the variances: it affirms the trial court's reversal of the use variance, and it reverses the trial court's reversal of the area variance and remands that matter for the trial court to apply the correct practical-difficulties standard. Judge Anita Laster Mays dissents in part, by separate opinion, from the majority's disposition of the variances. This matter is remanded to the trial court for further proceedings consistent with this opinion.

## PART I

### I. Factual Background

{¶ 3} LMM, a long-established Cleveland nonprofit, provides social services to vulnerable populations, including the formerly incarcerated, the homeless, and at-risk youth. The disputed property sits at 4100 Franklin Blvd. in Cleveland's Ohio City neighborhood, an area historically characterized by mixed residential and institutional uses. The property, zoned as two-family residential (2F-A) under the Cleveland Codified Ordinances ("CCO"), formerly housed an LMM transitional residence and administrative offices. LMM conducted those operations under a legal nonconforming use, which preceded a 1985 rezoning ordinance that reclassified Franklin Blvd. and adjoining streets from multi-family and local retail to residential. The 1985 legislative change aimed to restrict further commercial and

institutional encroachment into residential areas while preserving limited existing nonconforming uses.

### A. Prior Use of the Property

**{¶ 4}** In 2009, the City issued LMM a COO authorizing charitable use of the property. In 2017, LMM merged with Community Re-Entry, Inc., and Lutheran Family Services. In 2020, LMM subsequently merged with Lutheran Metro Properties, LLC, and LMM Leveraged Lender, LLC. In each case, LMM remained the sole surviving entity. LMM and its affiliates have continually operated the property as a lawful nonconforming charitable institution. LMM has at all times complied with the conditions set forth in the COO, providing an array of social and family services to its clients. LMM's services include adoption assistance, counseling, behavioral-health support, and distributing essentials like food, clothing, hygiene supplies, and bus passes. Additional programs offered at the property include workforce education and training, benefits assistance, and case management. (CV-23-976612, BZA Record transmitted Apr. 27, 2023, at 72-73, 75.) The property is also equipped with kitchen, laundry, and shower facilities, which have historically been accessible to LMM's clients on a limited basis. (*Id.* at 36, 45.)

### B. Proposed Use as a Youth Drop-In Center

**{¶ 5}** In 2022, LMM proposed to convert the Franklin Blvd. facility into a Youth Drop-In Center ("YDIC") designed to serve homeless and at-risk youth aged 16 to 24. The proposed YDIC would provide daytime shelter and essential services

such as shower and laundry facilities, food distribution, clothing, internet access, and life-skills programming. LMM emphasized that the YDIC would operate only during the day.

## II. Procedural Background

### A. Application for Review

{¶ 6} LMM submitted plans that included upgrades to the kitchen, bathroom, and laundry areas, along with requests to repave the parking lot and add features including an outdoor patio, privacy fencing, a library, and a computer lab. LMM argued that the YDIC was consistent with its existing COO and fell within the definition of a "charitable institution" under CCO 337.03(b) and 337.02(g)(3).

### B. Notice of Nonconformance

{¶ 7} After reviewing LMM's submission, the City issued an NNC regarding LMM's application. The City concluded that LMM's proposed use constituted an impermissible change of use under the zoning code because the YDIC introduced new activities, specifically, food service, laundry, and shower operations that were not previously approved and were more intensive than prior office or residential transitional uses. The notice required LMM either to (a) discontinue the proposed change or (b) apply to the BZA for the necessary use and area variances under CCO.

### C. LMM's Appeal to the BZA and Request for Variance

{¶ 8} LMM appealed to the BZA challenging the NNC. In the alternative, LMM requested variances authorizing the proposed use under CCO 329.03.

## 1. Testimony and Evidence at the BZA Hearings

{¶ 9} At the BZA hearings, LMM presented testimony from its executive leadership and community partners describing the purpose and need for the YDIC. Witnesses testified that the center would serve approximately 20 to 30 clients per day, that hours of operation would be limited to daytime hours, and that security and sanitation measures would be in place. The BZA approved the variances, subject to operational conditions.

{¶ 10} Several neighboring residents, including Ronald J.H. O'Leary ("O'Leary") and Rockas opposed the project. They testified that the YDIC would contribute to increased foot traffic, noise, loitering, and general disruption in the area. They also expressed concern that the proposed use was inconsistent with the residential zoning and would further institutionalize the Franklin Blvd. corridor, contrary to the purpose of the 1985 rezoning ordinance.

## 2. The BZA's Decision and Findings

{¶ 11} Following a hearing, the BZA upheld the NNC as it relates to dimensional nonconformity and granted a minor area variance for setback under CCO 329.03(b). The BZA found that the variance preserved the neighborhood's character. In its March 13, 2023 written decision, the board concluded that (a) LMM's proposed use fits within the existing permitted nonconforming charitable-institution use, but the proposed changes are an expansion of that nonconforming use and, therefore, a variance is required; (b) the property's prior institutional use and layout created a hardship unique to LMM that justified the

variance; and (c) the variance would not substantially alter the character of the neighborhood.

### D. Administrative Appeals to the Trial Court

{¶ 12} LMM appealed the BZA's decision to the Cuyahoga County Court of Common Pleas in Cuyahoga C.P. No. CV-23-976603, challenging the NNC. On March 16, 2023, O'Leary filed both a motion to intervene in that case and a separate administrative appeal in Cuyahoga C.P. No. CV-23-976612. The new appeal contested the BZA's grant of use and area variances in LMM's favor.

{¶ 13} The notice of appeal in Case No. CV-23-976612 identified multiple individuals as appellants, including Rockas and ten other neighbors, all appearing pro se. Rockas did not personally sign the notice. Instead, his name appeared with the notation "/s/Brian Rockas (RJHO by consent)." The filing did not indicate that O'Leary had entered an appearance as counsel for the group.

{¶ 14} In the trial court, the neighbors argued that the BZA's decision was unsupported by a preponderance of reliable, probative, and substantial evidence. The neighbors alleged that the BZA failed to make the explicit findings required by CCO 329.03(b), which states in part:

> (1) The practical difficulty or unnecessary hardship is peculiar to the premises sought to be built upon or used because of physical size, shape, or other characteristics of the premises . . . which differentiate it from other premises in the same district and create a difficulty or hardship caused by a strict application of the provisions of this Zoning Code not generally shared by other land or buildings in the same district; (2) Refusal of the variance appealed for will deprive the owner of substantial property rights; and (3) Granting of the variance appealed for will not be contrary to the purpose and intent of this Zoning Code.

{¶ 15} Finally, the neighbors alleged that the 1985 rezoning demonstrated legislative intent to prohibit further nonresidential expansion along Franklin Blvd. LMM and the City defended the BZA's decision, arguing that the board had discretion to weigh the evidence and that the trial court was not permitted to substitute its judgment for that of the administrative body.

### E.  The Trial Court's Partial Reversal and Jurisdictional Ruling

{¶ 16} On April 20, 2023, LMM moved to dismiss all appellants except O'Leary, arguing that the joint notice of appeal filed by O'Leary, Rockas, and the other neighbors did not comply with R.C. 2505.04 and App.R. 3.  LMM claimed that each appellant was required to individually invoke the jurisdiction of the court by filing an independent notice of appeal.  On May 24, 2023, the trial court granted LMM's motion and dismissed all appellants except O'Leary.  The court found that in administrative appeals, a joint notice of appeal does not confer jurisdiction upon parties who have not individually filed notices.  The trial court determined that only O'Leary had properly invoked the court's jurisdiction under R.C. 2505.04.  The trial court affirmed the BZA's decision upholding the City's NNC and reversed the BZA's decision granting the variances.  Three related appeals follow and have been consolidated for our review, raising the following assignments of error.

## III. Assignments of Error

### A.  LMM's Assignments of Error (No. 114706)

1. The trial court erred in affirming the BZA's decision to uphold a notice of nonconformance as to LMM's use of its property because the use is not a nonconforming use and its proposed use is a continuation,

not an expansion, enlargement, substitution, or other change of the property's longstanding use as a charitable institution.

2. The trial court erred in reversing the BZA's grant of variances to LMM permitting it to improve the property as part of its continued use as a charitable institution because the BZA's decision was not unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence in the record, and because the trial court improperly substituted its judgment for that of the BZA.[1]

## B. The BZA's Assignments of Error (No. 114700)

1. The common pleas court abused its discretion by substituting its judgment for that of the administrative agency, the Board of Zoning Appeals.

2. The common pleas court abused its discretion when the court exceeded its review authority by finding that a youth drop-in center should be placed in an area specifically zoned for such activity.

3. The common pleas court erred as a matter of law by failing to provide a journal entry with sufficient detail and analysis to permit appellate review of its decision.

4. The common pleas court abused its discretion where it usurped the authority of the City of Cleveland's legislature to determine and balance the zoning needs of its community in relation to public health, morals, welfare, or public safety.

## C. Rockas's Assignments of Error (No. 114709)

1. The trial court erred in dismissing the appeal of Brian Rockas and other individuals who jointly appealed the determination of the Board of Zoning Appeals.

---

[1] In 8th Dist. Cuyahoga No. 114706, O'Leary filed a brief in his capacity as a cross-appellee. While O'Leary identified several issues, he did not assert any independent assignments of error related to the trial court's rulings on the merits. Instead, he requested that the trial court's dismissal of the neighbors' administrative appeal be reversed. For purposes of appellate review, we construe this request as O'Leary's sole assignment of error. Although O'Leary presented arguments in support of the trial court's decisions upholding the NNC and reversing the BZA's grant of variances, he did so in defense of the judgment below, not in pursuit of affirmative relief.

2. The trial court failed in dismissing the appeal of Brian Rockas and other individuals who jointly appealed the determination of the Board of Zoning Appeals.

{¶ 17} The parties present multiple assignments and cross-assignments of error. LMM and the BZA each assert assignments addressing the NNC and the variances. Rockas raises two assignments challenging his dismissal for failure to perfect an administrative appeal and alleging a service defect. O'Leary, as an appellee on the merits, advances several arguments supporting the trial court's rulings on the NNC and the variances but tenders only a single assignment of error seeking reversal of the trial court's dismissal of the neighbors for lack of perfection. Similarly, the City supports the BZA's decisions concerning the NNC. For ease of analysis, we address the assignments out of order and group overlapping issues.

## IV. Standards of Review

### A. Jurisdiction and Perfection of Appeal — R.C. 2505.04

{¶ 18} A dismissal based on lack of subject-matter jurisdiction presents a question of law that this court reviews independently under a de novo standard. *Mitchell v. Dir., Ohio Dept. of Job & Family Servs.*, 2024-Ohio-2073, ¶ 20 (8th Dist.). Subject-matter jurisdiction derives from statute and cannot be conferred by agreement, waiver, or consent. *Holt v. Cuyahoga Cty.*, 2017-Ohio-748, ¶ 8 (8th Dist.). When jurisdiction depends on compliance with a statute governing the initiation of an appeal, such as the timely filing of a notice of appeal under R.C. 2505.04, the reviewing court must determine, as a matter of law, whether the

procedural requirements were met.  *Crosby-Edwards v. Ohio Bd. of Embalmers & Funeral Dirs.*, 2008-Ohio-762, ¶ 21 (10th Dist.).

### B.  Sufficiency of the Journal Entry for Appellate Review

{¶ 19} Whether a judgment entry contains enough reasoning to permit review presents a question of law we consider de novo.  *See MSRK, L.L.C. v. Twinsburg*, 2012-Ohio-2609, ¶ 6 (9th Dist.).  Although detailed explanation is preferred, the determining factor is whether the entry and the certified record together permit meaningful review.  *See Vang v. Cleveland*, 2017-Ohio-4187, ¶ 13 (8th Dist.).

### C.  Trial Court Review Under R.C. 2506.04

{¶ 20} When reviewing whether the trial court properly applied the standard set forth in R.C. 2506.04, the standard of review depends upon whether the reviewing body is the trial court or the appellate court.  Under R.C. 2506.04, the court of common pleas serves as the initial reviewing court in administrative appeals.  It must examine the entire record, including any new or additional evidence admitted under R.C. 2506.03.  "If a preponderance of reliable, probative and substantial evidence exists, the Court of Common Pleas must affirm the agency decision; if it does not exist, the court may reverse, vacate, modify or remand."  *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 207 (1979); *see also Aseff v. Cleveland Bd. of Zoning Appeals*, 142 Ohio App.3d 624 (8th Dist. 2001).

{¶ 21} Although the trial court weighs the evidence and examines the entire record, it does not conduct a de novo proceeding.  *Kisil v. Sandusky*, 12 Ohio St.3d

30, 34 (1984). The trial court must accord due deference to the administrative agency's resolution of evidentiary conflicts and may not, particularly in matters within the agency's specialized expertise, substitute its judgment for that of the agency. *Children's Laboratory School v. Huber Hts.*, 1995 Ohio App. LEXIS 3841, *5 (2d Dist. Sept. 6, 1995); R.C. 2506.04.

### D. Appellate Review Under R.C. 2506.04

{¶ 22} On further appeal, the judgment of the court of common pleas may be reviewed in this court only on questions of law, without reweighing the evidence. *Id.* at *6; *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147 (2000). Therefore, as to evidentiary challenges, we ask only whether the trial court abused its discretion in determining whether the administrative order is supported by a preponderance of reliable, probative, and substantial evidence. Appellate courts may not substitute their judgment for that of an administrative agency or a trial court, absent the approved criteria for doing so. *Kisil* at 34.

{¶ 23} A reversal is warranted only if, viewing the evidence in the light most favorable to the trial court's judgment, the record fails to demonstrate a preponderance of reliable, probative, and substantial evidence supporting the trial court's decision. *McDermott v. Bd. of Zoning Appeals*, 2024-Ohio-1780, ¶ 12 (8th Dist.).

### E. Scope of De Novo Review

{¶ 24} Here, the parties raise the following purely legal questions that we review de novo: (1) whether Rockas invoked the jurisdiction of the trial court by

perfecting his appeal, entitling him to service, as raised in his first and second assignments of error and in O'Leary's sole assignment of error; and (2) the sufficiency of the journal entry to permit meaningful appellate review, as raised in the BZA's third assignment of error.

## V. Analysis

### A. Perfection of Administrative Appeals (No. 114709)

{¶ 25} In Rockas's first assignment of error and O'Leary's sole assignment of error, the parties contend the trial court erred by dismissing all appellants except O'Leary. O'Leary and Rockas argue that the joint notice of appeal filed in the trial court substantially complied with App.R. 3(B), that the appellants (including Rockas) were identified in the caption, and that filing one notice for all neighbors did not deprive the court of jurisdiction. They maintain the dismissal elevated form over substance and frustrated App.R. 3(B)'s purpose of allowing joint appeals by parties with identical interests.

{¶ 26} R.C. 2505.04 governs perfection of appeals and provides that an appeal is perfected upon the filing of a written notice of appeal "in accordance with the Rules of Appellate Procedure." It further specifies that, in an administrative-related appeal, the notice is filed "with the administrative officer, agency, board, department, tribunal, commission, or other instrumentality involved." R.C. 2505.04.

{¶ 27} App.R. 3(A) similarly provides that an appeal is taken by filing a notice of appeal with the clerk of the trial court and that the timely filing of the notice

is the only jurisdictional step in perfecting an appeal. *Transamerica Ins. Co. v. Nolan*, 72 Ohio St.3d 320, 322-323 (1995). In support of his argument, Rockas relies on App.R. 3(B), captioned "Joint or Consolidated Appeals," which states:

> If two or more persons are entitled to appeal from a judgment or order of a trial court and their interests are such as to make joinder practicable, they may file a joint notice of appeal, or may join in appeal after filing separate timely notices of appeal, and they may thereafter proceed on appeal as a single appellant. Appeals may be consolidated by order of the court of appeals upon its own motion or upon motion of a party, or by stipulation of the parties to the several appeals.

{¶ 28} Under App.R. 3(A), jurisdiction is conferred when a timely notice is filed with the clerk, and App.R. 3(B) authorizes multiple appellants to file a joint notice when their interests are aligned. But App.R. 3(B)'s joint-notice language governs appeals from trial court judgments and does not displace R.C. 2505.04 and 2505.05 in administrative appeals under R.C. Ch. 2506. In an R.C. Ch. 2506.01 appeal, each party seeking to reverse or modify the agency decision must independently file and perfect a notice of appeal; absent a separately perfected appeal, the trial court lacks jurisdiction to consider that party's assignments of error. *AT&T Communications of Ohio, Inc. v. Lynch*, 2012-Ohio-1975, ¶ 22.

{¶ 29} Alternatively, the absence of a signature by the party or by counsel of record on the notice of appeal violates Civ.R. 11. A litigant may appear pro se on his own behalf, but a party may not sign or prosecute on behalf of another absent appearance as counsel of record. On this independent basis as well, dismissal was proper. The plain language of R.C. 2505.04 requires that a notice of appeal be filed "in accordance with" the applicable procedural rules; in other words, the notice must

be valid. The notice as to Rockas was invalid because it did not comply with Civ.R. 11.

{¶ 30} Civ.R. 11 requires that every pleading or paper be signed by at least one attorney of record or, if the party is not represented by an attorney, be signed by the party. Even in appeals from trial-court judgments, a joint notice of appeal must expressly name each appellant and be personally signed, either by each pro se litigant or by counsel of record on behalf of each represented party. *Hineman v. Brown*, 2003-Ohio-926, ¶ 2 (11th Dist.) (requiring each pro se appellant to be named and to personally sign to invoke jurisdiction).

{¶ 31} Here, the record shows that all appellants appeared pro se in the administrative proceedings below. The notice of appeal filed in the trial court was prepared and signed by O'Leary, who listed himself and the remaining appellants, including Rockas, in the caption. Several individuals signed the notice in their own names; others, including Rockas, were named but did not personally sign. O'Leary, though a licensed attorney, appeared pro se and did not enter an appearance as counsel of record for the group.

{¶ 32} Because O'Leary signed only in his personal capacity, his signature perfected the appeal solely for himself. His professional license did not authorize him to act as counsel for others without entering an appearance. *See* Civ.R. 11; Prof.Cond.R. 1.2(a) (scope of representation). Consequently, the joint filing was jurisdictionally effective as to O'Leary, but not as to Rockas.

{¶ 33} A pro se litigant, even one who is an attorney, cannot act as counsel for co-appellants absent proper authorization and appearance. *See State ex rel. Hadley v. Pike*, 2014-Ohio-3310, ¶ 10 (7th Dist.).

{¶ 34} While App.R. 3(B) facilitates joint appeals in some circumstances, it does not abrogate the requirement that each pro se appellant personally execute the notice or authorize an attorney of record to do so. Because Rockas neither signed nor retained O'Leary as counsel of record, his appeal was not perfected under R.C. 2505.04 and App.R. 3(A). The trial court correctly determined that jurisdiction vested only in those appellants who executed the filing. Rockas's first assignment of error and O'Leary's sole assignment of error are overruled.

## B. Service Upon Pro Se Appellants

{¶ 35} In his second assignment of error, Rockas contends the trial court failed to ensure that all pro se litigants, including Rockas, were properly served with all filings.

{¶ 36} Under App.R. 13(B), service of all papers "required or permitted to be served shall be made upon each of the parties." Service on a party represented by counsel must be made upon that attorney, while service on a self-represented party must be made directly upon the party. Civ.R. 5(A) mirrors this requirement of service on every party.

{¶ 37} Ohio courts strictly construe these provisions to protect due-process rights. Service upon an attorney is valid only if that attorney has entered an appearance as counsel of record for the party served. Civ.R. 5(B); *Ervin v. Patrons*

*Mut. Ins. Co.*, 20 Ohio St.3d 8 (1985). Failure of service that deprives a party of actual notice may render a judgment voidable. *Miller v. Lint*, 62 Ohio St.2d 209, 214 (1980).

{¶ 38} Rockas argues that LMM's motion to dismiss was served electronically only on O'Leary and not upon the remaining pro se appellants. He asserts that because several appellants, including himself, were unrepresented, LMM was required under Civ.R. 5 to serve each individually. Rockas contends that the failure to do so deprived the trial court of authority to dismiss the appeal. *See Citibank v. Wood*, 2006-Ohio-5755, ¶ 8 (2d Dist.) (failure to mail motion to pro se party reversible). However, a party's entitlement to service under the Civil Rules presumes that the party has first properly perfected an appeal and become a party of record. *Apostolic Faith Assembly, Inc. v. Coventry Twp.*, 2008-Ohio-2820, ¶ 6 (9th Dist.).

{¶ 39} Here, the notice of appeal was filed and signed by one neighbor who is a licensed attorney but appeared pro se and who signed on behalf of other pro se neighbors. Because each appellant must independently file and perfect an administrative appeal under R.C. 2505.04, a pro se filer may not sign a notice of appeal for other pro se filers. The trial court enforced the individual-filing requirement recognized in *AT&T Communications of Ohio, Inc.*, 2012-Ohio-1975, and dismissed Rockas as a party.

{¶ 40} The arguments Rockas raises in his second assignment of error relating to service underscore the rationale for the jurisdictional rule requiring

appellants to file individual notices of appeal pursuant to *AT&T Communications of Ohio, Inc.* The invalid notice of appeal created ambiguity as to who had properly invoked the court's jurisdiction and who was entitled to service. Once the trial court determined that Rockas had not perfected his appeal, it lacked authority to consider further procedural objections. This jurisdictional defect is dispositive and forecloses review of all issues, including claims of deficient service. *See Cyr v. State Med. Bd. of Ohio*, 2022-Ohio-25, ¶ 11 (10th Dist.).

{¶ 41} Because Rockas did not perfect an administrative appeal, his service-related assignment, which presupposes party status, is moot and is overruled on that basis.

## C. Sufficiency of the Journal Entry

{¶ 42} In its third assignment of error, the BZA argues the trial court erred by issuing a journal entry insufficient for appellate review. A judgment entry is sufficient if, together with the certified record, it permits meaningful appellate review. Whether the entry so permits is a question of law we review de novo.

{¶ 43} We agree that the trial court's two-page entry is sparse. It cites the applicable zoning provisions and states that the BZA's variance decision is unsupported by law, but it offers no analysis or findings of fact. The BZA contends this lack of detail precludes review.

{¶ 44} Unlike cases in which conclusory entries prevent appellate review, the certified record here, consisting of the BZA transcript, exhibits, and filings, provides a sufficient basis to evaluate the issues under R.C. 2506.04. Because we can

ascertain whether the trial court applied the correct legal standards and whether its judgment finds support in the record, a remand for a more detailed entry is unnecessary. The BZA's third assignment of error is overruled. We now turn to the trial court's application of R.C. 2506.04.

### D. Notice of Nonconformance

{¶ 45} In its first assignment of error, LMM challenges the trial court's order affirming the BZA's NNC. LMM argues that the trial court misinterpreted the ordinance governing "charitable institutions" and erred when it determined that the proposed use of the property was a continuation, enlargement, or change of nonconforming uses under CCO 359.01. The City and the BZA contend the trial court did not abuse its discretion in affirming the BZA's decision that LMM's proposed YDIC was not a continuation of any prior lawful nonconforming "charitable institution" use at 4100 Franklin Blvd. and that the trial court properly affirmed the BZA's affirmance of the NNC.

{¶ 46} The trial court found that the operations at the site had expanded materially beyond the prior charitable use, citing the addition of showers, laundry facilities, and a commercial kitchen/food service; extended operating hours; and increased foot traffic and security needs. On that basis, the court affirmed the NNC.

{¶ 47} The BZA attests that its decision was supported by reliable, probative, and substantial evidence. In contrast, LMM contends the trial court misapplied R.C. 2506.04 and failed to accord proper weight to the certified record when it affirmed the issuance of the NNC. Under R.C. 2506.04, the trial court must

determine whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of reliable, probative, and substantial evidence. *Henley*, 90 Ohio St.3d at 147; *Kisil*, 12 Ohio St.3d at 34. If a preponderance of reliable, probative, and substantial evidence supports the administrative order, the trial court must affirm; if it does not, the court may reverse, vacate, modify, or remand. *Dudukovich*, 58 Ohio St.2d at 207.

{¶ 48} The trial court's journal entry affirming the NNC stated in part:

> [a]fter review of the complete record, the Court finds that significant changes to the building and operations at the property were being requested. The Court finds that the proposed Youth Drop-In Center would expand and enlarge the use of the property, including the hours of operation of the facility and the amount of activity at the facility. The Court finds that the City Zoning Administrator's decision to issue the Notice of Non-Conformance was not arbitrary, capricious, unreasonable, illegal, or unconstitutional and was supported by a preponderance of substantial, reliable and probative evidence. The decision of the Board of Zoning Appeals upholding the May 13, 2022 Notice of Non-Conformance issued by the City Zoning Administrator in connection with LMM's Youth Drop-In Center for homeless and housing-insecure youths and young adults is affirmed.

(Journal Entry, Sept. 12, 2023.)

{¶ 49} After reviewing the evidence in a light most favorable to the trial court's decision, we will reverse only as a matter of law, in the absence of a "preponderance of reliable, probative, and substantial evidence" to support the trial court's decision. *McDermott*, 2024-Ohio-1780, at ¶ 12 (8th Dist.), citing *Kisil* at 34; *Gregory v. Cuyahoga Cty.*, 2020-Ohio-2714, ¶ 24, (8th Dist.), quoting *Kurutz v. Cleveland*, 2018-Ohio-2398, ¶ 8 (8th Dist.).

{¶ 50} On this record, the trial court could reasonably conclude, based on a preponderance of reliable, probative, and substantial evidence, that the BZA's decision to sustain the NNC was supported by the evidence. Initially, we note that CCO 359.01(a) permits the continuation of a lawful nonconforming use but, absent a variance, prohibits its enlargement and, absent a special permit, prohibits any substitution or change in use unless the new use is found to be no more harmful or objectionable than the prior use. The certified record reflects (1) a material change in on-site functions at 4100 Franklin Blvd.: adding showers, laundry, and a kitchen for food service, and distribution of clothing, personal-hygiene items, and transit passes; (2) a shift in clientele to youth ages 16-24 experiencing homelessness or housing instability; (3) expanded operational requirements (hours, staffing, traffic, supervision, and security protocols); (4) planned interior renovations to accommodate the new and expanded functions, including dedicated shower areas, a kitchen, a library, and a computer lab; and (5) outdoor improvements and related parking changes. CCO 337.02(g), 337.03(b), and 359.01(a) permit these charitable functions provided the use is located at least 30 feet from adjoining premises and the expanded use and hours receive appropriate variances from the BZA. We rely on the ordinance text contained in the certified record. To the extent an ordinance provision is not included in the record, we describe it only to the degree necessary to resolve the legal issue presented.

{¶ 51} The record and the trial court's journal entry reflect a preponderance of evidence supporting the conclusion that LMM's proposal constitutes a change or

enlargement in use rather than mere continuation. Accordingly, the trial court did not abuse its discretion in finding that the nonconformance determination is supported by a preponderance of reliable and probative evidence. LMM's first assignment of error is overruled.

### E. Variances Under CCO 359.01(a)

{¶ 52} CCO 359.01(a) governs changes to lawful nonconforming uses and creates two distinct avenues for BZA action. It permits continuation of a lawful nonconforming use, but "no enlargement or expansion shall be permitted except as a variance under the terms of Chapter 329," and "no substitution or other change in such nonconforming use to other than a conforming use shall be permitted except by special permit from the Board of Zoning Appeals." The ordinance further provides that a special permit may issue only if, after public hearing, the board finds that the new nonconforming use is "no more harmful or objectionable than the previous nonconforming use" in floor or space occupied, volume of trade or production, daily hours or other period of use, the type or number of persons attracted to the premises, and "any other characteristic of the new use as compared with the previous use."

{¶ 53} The standards embedded in these two mechanisms are materially different. A use variance under CCO 329.03(b) requires a showing of "unnecessary hardship" peculiar to the premises, not self-created, such that refusal of the variance will deprive the owner of substantial property rights and the relief will not be contrary to the purpose and intent of the zoning code. By contrast, a special permit

under CCO 359.01(a) does not turn on hardship at all; it turns on a comparative-impact finding that the proposed nonconforming use will be no more harmful or objectionable than the existing nonconforming use across the ordinance's specified operational dimensions.

{¶ 54} LMM's filings to the BZA expressly invoked both routes. The NNC advised that, because the property was an existing nonconforming charitable institution, LMM's proposed expansion would require "a variance or special permit" under CCO 359.01. In response, LMM appealed the NNC and, in the alternative, requested "a use variance and an area variance," while also asking the board to authorize the proposed YDIC if it deemed the use a substitution or change. Notwithstanding this dual framing, the BZA's written March 13, 2023 resolution characterizes its action solely as granting a "variance," recites the CCO 329.03(b) hardship and substantial-rights language, and nowhere states that it is issuing a special permit or that the new use is "no more harmful or objectionable" than the prior use in the respects listed in CCO 359.01(a). We confine our analysis to the BZA's grant of a use variance and an area variance under CCO 329.03(b), and we express no view on whether LMM may qualify for, or whether the BZA should grant, any special permit under CCO 359.01(a).

### F. The Use and Area Variances

{¶ 55} The remaining assignments of error, LMM's assignment of error No. 2 and the BZA's assignments of error Nos. 1, 2, and 4, challenge the trial court's reversal of the BZA's grant of the use and area variances and contend that the trial

court exceeded its limited authority under R.C. 2506.04. Those assignments are resolved by the majority in Part II. As explained there, the majority affirms the trial court's reversal of the use variance and reverses the trial court's reversal of the area variance and remands that matter to the trial court to apply the correct practical-difficulties standard. The author of Part I would resolve the variances differently and dissents in part from the majority's disposition, as set out in the separate opinion.

## VI. Disposition

{¶ 56} In 8th Dist. Cuyahoga No. 114706, LMM's first assignment of error, challenging the trial court's judgment affirming the NNC, is overruled. LMM's second assignment of error, which concerns the variances, is addressed by the majority in Part II.

{¶ 57} In 8th Dist. Cuyahoga No. 114700, the BZA's third assignment of error, challenging the sufficiency of the trial court's journal entry, is overruled. The BZA's first, second, and fourth assignments of error, which concern the variances, are addressed by the majority in Part II. O'Leary's sole assignment of error, challenging the trial court's dismissal of Rockas's appeal for lack of jurisdiction, is overruled.

{¶ 58} In 8th Dist. Cuyahoga No. 114709, Rockas's first assignment of error, challenging the dismissal of the joint administrative appeal for lack of perfection, is overruled. His second assignment of error, concerning service of filings on pro se

litigants, is overruled as moot. The trial court's judgment in 8th Dist. Cuyahoga No. 114709 is affirmed.

{¶ 59} The assignments of error directed to the use and area variances — LMM's second assignment of error and the BZA's first, second, and fourth assignments of error, are resolved by the majority in Part II, from which the author of Part I dissents in part by separate opinion. The court's judgment, together with the entry of costs and the mandate, is set out at the conclusion of Part II.

_____
ANITA LASTER MAYS, JUDGE

LISA B. FORBES, P.J., CONCURS IN JUDGMENT ONLY;
SEAN C. GALLAGHER, J., CONCURS IN JUDGMENT ONLY

**Part II**

LISA B. FORBES, P.J.:

{¶ 60} This portion of the opinion addresses LMM's assignment of error No. 2 and the BZA's assignments of error Nos. 1, 2, and 4, each of which challenges the trial court's decision reversing the BZA's award of the use and area variances requested by LMM. After thorough review of the law and the facts, we overrule these assignments of error as relates to the use variance requested by LMM and we sustain these assignments of error as relates to the area variance. Accordingly, we reverse the trial court's decision concerning the area variance and remand the matter to the trial court to apply the correct legal analysis.

**A. Background**

**1. The BZA's Variance Decision**

{¶ 61} The BZA's Resolution issued on March 13, 2023, granting variances requested by LMM (the "Resolution") explained that LMM is the owner of 4100 Franklin Blvd. and that LMM "proposes to renovate existing legal non-conforming charitable institution to add use as drop-in care center for teens and adults, and to expand hours of operation at in [sic] a B1 Two-Family Residential District." The Resolution specified that LMM "appeals for relief from the strict application" of the following ordinances: (1) CCO 337.03(b)/337.02(g), noting that LMM's proposed use "is not 30 feet from adjoining premises," and (2) CCO 359.01(a), which addresses special permits required for a change in use of a previously allowed but nonconforming use.[2]

{¶ 62} The Resolution outlined testimony and evidence presented at the hearing, stated that the BZA had considered that testimony and evidence, and granted "the variances" while imposing on LMM specific operating conditions including, but not limited to, hours of operation, disallowing overnight stays at the facility, and prohibiting loitering. Without specifically stating that it was granting LMM both a use and an area variance, the BZA then found that

> [l]ocal conditions and evidence presented justify the Board in granting relief from practical difficulty and unnecessary hardship caused by strict compliance with specific provisions of the zoning ordinances. Refusal of the variance would deprive the owner of substantial property

---

[2] The BZA incorrectly identified the code section as CCO 349.01(a) in its Resolution. In fact, the terms of the ordinance recited in the Resolution make clear that the correct cite for the ordinance is CCO 359.01(a).

rights and granting the appeal will not be contrary to the purpose and intent of the Zoning Code.

### 2. The Trial Court's Decision

{¶ 63} The trial court disagreed with the BZA's decision granting the area and use variances. After quoting CCO 329.03(b) and (c), and after recounting the parties' arguments, the trial court concluded that LMM did not "prove by a preponderance of the evidence that a strict applicability of the Zoning Code would create hardship for the property or deprive LMM of substantial property rights." The court further noted, "LMM can still provide the charitable resources that they are now providing at the property and place a Youth Drop-In Center in a different neighborhood zoned for such activity." The trial court went on to find that "the variance would be contrary to the purpose and intent of the Zoning Code. In 1985 the neighborhood was classified as a two-family residential neighborhood. Clearly the district was zoned to be a residential neighborhood."

{¶ 64} The court concluded "the BZA's granting of the use variance and the area variance was not supported by a preponderance of substantial, reliable, and probative evidence on the whole record that the variances would comply with the conditions set forth in CCO 329.03." The trial court reversed the BZA's decision that had granted the variances.

### B. Law and Analysis

### 1. Standard of Review

{¶ 65} R.C. Ch. 2506 governs appeals from final orders issued by the BZA to the court of common pleas. *See Cleveland Clinic Found. v. Bd. of Zoning Appeals*,

2014-Ohio-4809, ¶ 22. Under R.C. 2506.04, the trial court "may find that the order, adjudication or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." That is, the court of common pleas has the "power to examine the whole record, make factual and legal determinations, and reverse the board's decision if it is not supported by a preponderance of substantial, reliable, and probative evidence." *Id*. at ¶ 24, citing *Dudukovich*, 58 Ohio St.2d at 207. "In reviewing a board of zoning appeals' decision, the common pleas court must 'not substitute its judgment for that of an administrative board . . . unless the court finds that there is not a preponderance of reliable, probative and substantial evidence to support the board's decision.'" *TMS Ents. v. Cleveland Bd. of Zoning Appeals,* 2024-Ohio-1888, ¶ 14 (8th Dist.), quoting *Kisil,* 12 Ohio St.3d at 34.

{¶ 66} The Supreme Court clarified the role of the appellate courts in this process, explaining that, in contrast to the court of common pleas,

> the standard of review for an appellate court reviewing a judgment of a common pleas court in this type of appeal is narrower and more deferential to the lower court's decision . . . . The courts of appeals may review the judgments of the common please courts only on questions of law; they do not have the same power to weigh the evidence.

*Cleveland Clinic Found.* at ¶ 25, citing *Kisil* at 34. Further, "R.C. 2506.04 requires the court of appeals to affirm unless the court of appeals finds, as a matter of law, that the decision *of the common pleas court* is not supported by a preponderance of reliable, probative, and substantial evidence." (Emphasis in original.) *Id*. at ¶ 27 (finding the court of appeals had not applied the correct standard in reversing the

judgment of the common pleas court because it reviewed the BZA's decision, not the trial court's). The Court explained that the court of appeals may reverse the trial court where the trial court "errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law." *Id.* at ¶ 30.

### 2. The Ordinances

{¶ 67} The neighborhood where LMM's property is located is zoned as a Two-Family District pursuant to CCO 337.03(b), which authorizes all "uses permitted and as regulated in a One-Family District." In a one-family district, CCO 337.02(g) provides that charitable institutions (not for correctional purposes) are permitted if located not less than 30 feet from any adjoining premises. Such institutions must also be approved by the BZA in accordance with certain conditions such as adequate yard space, if "other safeguards to preserve the character of the neighborhood are provided," and "if in the judgment of the Board such buildings and uses are appropriately located and designed and will meet a community need without adversely affecting the neighborhood." CCO 337.02(g)(3)(G).

{¶ 68} CCO 359.01(a) addresses the circumstances under which a nonconforming property may enlarge or expand, or may substitute or change that nonconforming use, providing as follows:

> [A] use of building or land lawfully existing on the effective date of this Zoning Code or of any amendment or supplement thereto, or for which a permit has been lawfully issued, may be continued even though such use does not conform to the provisions of this Zoning Code for the use district in which it is located, but no enlargement or expansion shall be permitted except as a variance under the terms of Chapter 329 and no

substitution or other change in such nonconforming use to other than a conforming use shall be permitted except by special permit.

A special permit may be issued by the BZA after a hearing if the Board finds

such substitution or other change is no more harmful or objectionable than the previous nonconforming use in floor or other space occupied, In volume of trade or production, in kind of goods sold or produced, in daily hours or other period of use, in the type or number of persons to occupy or to be attracted to the premises or in any other characteristic of the new use as compared with the previous use.

*Id.*

### 3. Variances

{¶ 69} The party seeking a variance from these or other provisions of the zoning code has the burden to prove three conditions found in CCO 329.03(b). *Kurtock v. Cleveland Bd. of Zoning Appeals,* 2014-Ohio-1836 (8th Dist.). Those three conditions are

(1) [t]he practical difficulty or unnecessary hardship . . . caused by a strict application of the provisions of this Zoning Code not generally shared by other land or buildings in the same district; (2) [r]efusal of the variance appealed for will deprive the owner of substantial property rights, and (3) [g]ranting the variance appealed for will not be contrary to the purpose and intent of the zoning code.

CCO 329.03(b).

{¶ 70} Whether a party seeks an area variance or a use variance is significant because different standards apply. The Ohio Supreme Court explained, "The standard for granting a variance which relates solely to area requirements should be a lesser standard than that applied to variances which relate to use." *Kisil*, 12 Ohio St.3d at syllabus.

{¶ 71} Here, the trial court erred when it reversed the BZA's award of variances, maintaining that the record lacked evidence of "hardship" without distinguishing between the area and use variances requested by LMM. As relates to the use variance, we find that error harmless and uphold the trial court's decision. Regarding the area variance, we reverse, finding that the trial court erred as a matter of law and that its decision is not supported by a preponderance of reliable, probative, and substantial evidence.

### a. Use Variance

{¶ 72} To support a use variance under CCO 329.03(b), a party must demonstrate "unnecessary hardship." *See McDermott*, 2024-Ohio-1780, at ¶ 26 (8th Dist.). "Unnecessary hardship" has been defined to mean that "the property is unsuitable to any of the uses permitted by the zoning resolution." *Id*. "[W]hether an unnecessary hardship exists is [a question] of fact entrusted to the board's discretion." *Id*. at ¶ 27.

{¶ 73} The trial court incorrectly stated the test as requiring a demonstration of "hardship" rather than "unnecessary hardship." Nonetheless, in its analysis, it correctly considered whether the property was unsuitable to any of the permitted uses under the zoning code. The trial court concluded, "LMM can still provide the charitable resources that they are now providing at the property." That is, the trial court concluded that the Property is suitable for a permitted use. Consequently, we find that the trial court's error in its statement of the test was harmless because it applied the correct test. Under Civ.R. 61, "[t]he court at every stage of the

proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

{¶ 74} In assessing whether the trial court erred in concluding that LMM had not presented a preponderance of the evidence to support the use variance, we consider the trial court's statement that LMM could "place a Youth Drop-In Center in a different neighborhood zoned for such activity." The BZA challenged this statement with its second assignment of error, asserting that the trial court "exceeded its review authority." We agree with the BZA that this statement by the trial court was improper in connection with its consideration of the requested variances. Whether a YDIC could be located in another neighborhood was not the question before the court. The only question before the court was whether the BZA had properly awarded variances to LMM. Nevertheless, we do not agree that the trial court "exceeded its review authority" when it made the statement. To the extent the trial court's statement was error, it was harmless. As addressed, the trial court applied the correct legal test to assess whether LMM had demonstrated "unnecessary hardship."

{¶ 75} We note that there would be no need for a "different neighborhood" as suggested by the trial court if, for example, the BZA were to issue LMM a special use permit under CCO 359.01(a). Moreover, the neighborhood where LMM's property is located is zoned for charitable use provided the BZA finds that certain conditions are met. *See* CCO 337.02(g)(2)(G). While the Resolution indicates that the BZA considered whether strict compliance with CCO 359.01(a) and

337.02(g)/337.03(b) was required, the record before this court does not reveal whether the BZA determined if LMM's proposed change in use meets these or any other applicable criteria under the zoning code to allow for operation of the YDIC on LMM's property.

{¶ 76} Because the record supports the trial court's decision that LMM did not present a preponderance of the evidence demonstrating that its building is not suitable to any use permitted by the current zoning, we find that the trial court did not err in reversing the BZA's award of a use variance. Similarly, we find that the trial court's statement about placing the YDIC in different neighborhood did not exceed the trial court's review authority and does not amount to reversible error.

{¶ 77} For these reasons, we affirm the trial court's decision reversing the BZA's award of a use variance.

### b. Area Variance

{¶ 78} As relates to the area variance, LMM was required to show practical difficulties — not unnecessary hardship — to support a variance. *See Kisil*, 12 Ohio St.3d at syllabus (To support an area variance, "it is sufficient that the application show practical difficulties."); *see also ProTerra, Inc. v. Cleveland Bd. of Zoning Appeals*, 2020-Ohio-6739, ¶ 24 (8th Dist.). According to the Ohio Supreme Court, the "key to the [practical difficulties] standard is whether the area zoning requirement, as applied to the property owner in question, is reasonable." *Duncan v. Middlefield*, 23 Ohio St.3d 83, 86 (1986). The Ohio Supreme Court recognized that "no single factor controls in a determination of practical difficulties." *Id.* The

Court went on to identify factors to consider and weigh in determining whether a property owner seeking a variance has encountered practical difficulties, including but not limited to the following,

> (1) . . . whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services; (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance.

*Id.*, citing 3 Anderson, *American Law of Zoning* Variances, §18.47 et seq. (2d Ed. 1977). The trial court considered only whether LMM had demonstrated "hardship," not whether LMM had demonstrated practical difficulties in connection with the area variance. In doing so, the trial court committed an error of law because it applied the wrong legal standard in reversing the BZA's decision.

{¶ 79} As relates to the area variance, for these reasons, we reverse the trial court's judgment and remand the matter to the trial court for further proceedings.

{¶ 80} For the foregoing reasons, LMM's assignment of error No. 2 and the BZA's assignments of error Nos. 1, 2, and 4, are overruled as relates to the use variance and sustained as relates to the area variance.

{¶ 81} Judgment affirmed in part, reversed in part, and remanded to the trial court for proceedings consistent with this opinion.

It is ordered that appellees and appellants share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this opinion shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

SEAN C. GALLAGHER, J., CONCURS;
ANITA LASTER MAYS, J., CONCURRING IN PART AND DISSENTING IN PART
(WITH SEPARATE OPINION)

ANITA LASTER MAYS, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 82} I author Part I for the court and write separately only as to the variances resolved in Part II. The majority and I agree on the governing premise that the trial court applied the wrong legal standard when it reversed the BZA, and we agree on the remedy that error requires for the area variance: because the trial court never applied the practical-difficulties standard, that variance must be returned to the common pleas court to apply it in the first instance. We part company on a single point. The trial court's error was not confined to the area variance; the same error infected the use variance that the majority affirms but which, in my view, must likewise be reversed and remanded for application of the correct standard. To that extent, I respectfully dissent.

## A. The Appellate Standard Requires Us to Correct the Trial Court's Legal Error, Not to Ratify It.

{¶ 83} On a further appeal under R.C. 2506.04, this court reviews the judgment of the common pleas court on questions of law only; we do not weigh the evidence. *Cleveland Clinic Found.*, 2014-Ohio-4809, at ¶ 25; *Henley*, 90 Ohio St.3d at 147. We must affirm unless we find, as a matter of law, that the common pleas court's decision is unsupported by a preponderance of reliable, probative, and substantial evidence, or that the court erred in its application or interpretation of the law. *Cleveland Clinic Found.* at ¶ 27, 30. A trial court enjoys no deference on a question of law, and an administrative appellant is entitled to have a legal error corrected, not merely identified and then excused.

{¶ 84} That standard cuts in one direction here. Once we conclude that the trial court misapprehended the controlling standard, the corrected standard must be applied to the certified record and that application belongs to the common pleas court, the body authorized to weigh the evidence, not to this court. The majority follows that course for the area variance, remanding it for the trial court to apply the practical-difficulties factors. It does not follow the same course for the use variance, where the identical error appears; it instead affirms a ruling the trial court reached under the wrong standard.

## B. The Trial Court's Error Infected Both Variances.

{¶ 85} The majority holds, correctly, that an area variance is governed by the practical-difficulties standard, a lesser showing than the unnecessary hardship

required for a use variance, *Kisil*, 12 Ohio St.3d at syllabus, and that the trial court reversibly erred by measuring the area variance against "hardship" rather than against the practical-difficulties factors of *Duncan*, 23 Ohio St.3d at 83, 86. *See also ProTerra, Inc.*, 2020-Ohio-6739, at ¶ 24 (8th Dist.).

{¶ 86} The trial court's entry, however, did not apply one standard to the area variance and a different, correct standard to the use variance. It applied a single, undifferentiated "hardship" inquiry to both. The majority rescues the use-variance ruling under Civ.R. 61 on the theory that, although the trial court misstated the test, it applied the correct one in substance. I cannot agree. What the majority reads as a permissible suitability finding is the trial court's statement that "LMM can still provide the charitable resources that they are now providing at the property" and could "place a Youth Drop-In Center in a different neighborhood zoned for such activity." That is not a finding that the property is unsuitable to any permitted use within the meaning of the unnecessary-hardship test. *McDermott*, 2024-Ohio-1780, at ¶ 26 (8th Dist.). It is a judgment about where LMM's program ought to be located, a determination committed to the board, not the court.

{¶ 87} Whether unnecessary hardship exists is a question of fact entrusted to the board's discretion. *Id.* at ¶ 27. The trial court was not free to resolve that question anew, and the common pleas court may not substitute its judgment for the board's unless the record lacks a preponderance of reliable, probative, and substantial evidence to support the board's decision. *TMS Ents.*, 2024-Ohio-1888, at ¶ 14 (8th Dist.), quoting *Kisil* at 34. The "different neighborhood" remark is the

clearest evidence that the trial court did precisely what R.C. 2506.04 forbids. The majority concedes the remark was improper but treats it as harmless. I would hold that it is not harmless because it reveals the analytical error itself: the court reweighed the board's land-use considerations rather than asking whether that choice found record support.

{¶ 88} The framing of the use variance is further clouded by a problem Part I identified and reserved. LMM sought relief by two routes, a variance under CCO 329.03(b) and, in the alternative, a special permit under CCO 359.01(a). The special-permit standard does not turn on suitability to another use; it turns on whether the proposed nonconforming use is no more harmful or objectionable than the prior nonconforming use across the operational dimensions the ordinance specifies. To affirm the reversal of the use variance on a suitability rationale requires us to embrace the trial court's legal error, not to cure it, and to do so without addressing the comparative-impact inquiry the record may actually require.

### C. Both Variances Should Be Remanded to Apply the Correct Standards.

{¶ 89} Having identified a legal error that the trial court committed as to both variances, the question is the proper disposition. Our review is confined to questions of law; we may not weigh the practical difficulties factors or the unnecessary hardship evidence in the first instance. *Henley,* 90 Ohio St.3d at 147; *Kisil,* 12 Ohio St.3d at 34. When a common pleas court reverses a board of zoning appeals under the wrong legal standard, generally, the course is to reverse and

remand so that the court may apply the correct standard to the record. *See Briggs v. Dinsmore Twp. Bd. of Zoning Appeals,* 2005-Ohio-3077, ¶ 12-13 (3d Dist.) (reversing and remanding for the trial court to determine, under the proper standard, whether the board's variance decision was supported by the requisite evidence); R.C. 2506.04 (authorizing the reviewing court, consistent with its findings, to reverse and remand the cause).

{¶ 90} The record is not barren of evidence bearing on the correct standards. The board heard testimony that the center would serve a limited number of clients during daytime hours only and would operate under security and sanitation measures; it imposed conditions limiting hours and prohibiting overnight stays and loitering; and it found that refusal would deprive LMM of substantial property rights and that the relief would not offend the purpose of the zoning code. Whether that evidence satisfies the practical-difficulties factors of *Duncan* for the area variance, and the unnecessary-hardship standard for the use variance, is a determination for the common pleas court to make on remand, under the correct standards, in the first instance. It is not one for this court to resolve by weighing the evidence ourselves. The neighborhood is zoned to permit charitable institutions subject to board approval, CCO 337.02(g) and 337.03(b), and on remand the trial court must measure the board's findings against the proper standard rather than against the policy preference it voiced below.

{¶ 91} A disposition that corrects only the area variance, while leaving the use-variance reversal intact, perpetuates the very error the court identifies. The trial

court measured both variances against a single, undifferentiated "hardship" inquiry and rested on an impermissible view of where LMM's program belongs. Correcting that error as to one variance but not the other lets the mislabeled analysis keep its hold on the use variance. The sounder course is to reverse and remand both so that the common pleas court applies the unnecessary-hardship standard and, if it reaches the comparative-impact inquiry, the special-permit standard under CCO 359.01(a) to the use variance and the practical-difficulties standard to the area variance.

{¶ 92} I would reverse the trial court's judgment reversing both the use variance and the area variance and remand both to the common pleas court to apply the correct, distinct standards in the first instance. I concur in Part I in its entirety and in the majority's remand of the area variance; I dissent only from the affirmance of the trial court's reversal of the use variance, which I would remand for the same reasons. To that extent, I respectfully dissent.